No. 36,941

H. G. GODSOE and DAVID W. RUSSELL, Co-partners doing business as THE CITY CAB COMPANY, of Newton, *Appellants,* v. HAROLD HARDER, a Minor, *Appellee.*

(187 P. 2d 515)

Opinion filed December 6, 1947.

*John P. Flinn,* of Newton, argued the cause, and *Alden E. Branine* and *C. Fred Ice,* both of Newton, were with him on the briefs for the appellants.

*J. Sidney Nye,* of Newton, and *J. B. McKay,* of El Dorado, argued the cause, and *Clem H. Silvers,* was with them on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for damages alleged to have been sustained by plaintiffs in a collision between two automobiles. The defendant was a minor. The motion of his father as natural guardian to quash the service of summons upon defendant, a minor, was sustained. The plaintiffs have appealed.

When the first summons was returned there was doubt in the minds of counsel for the plaintiffs as to whether or not the service was good, whereupon they filed a praecipe for alias summons in the following words:

"The Clerk of the above named court will please issue an alias summons for Harold Harder, a minor, Whitewater, Kansas."

Then in parentheses:

"(The Sheriff in making service of summons will please serve a copy upon the minor defendant and a copy upon his legal guardian, if he has one, and if no legal guardian, then upon G. A. Harder, as father and natural guardian of said minor. If the minor cannot be personally found, he should be served by leaving a copy of the summons at his usual place of residence, and the Sheriff's return should show that said minor could not be found, and for that reason could not be served by delivering a copy of the summons to him personally.)"

The return of the sheriff upon this summons was as follows:

"Received this Writ, Feb. 14, 1947, and as commanded therein I summoned the following persons of the defendants within named at the times following, to-wit:

"G. A. Harder as Father and Natural Guardian of said minor, Harold Harder Feb. 14, 1947 by delivering to each of said defendants personally in said county a true copy of the within summons with all the endorsements thereon.

"And I summoned in said county the following persons, of the defendants within named at the times following, to-wit:

"Copy was left at the usual place of residence of Harold Harder. Was unable to serve the defendant, Harold Harder, personally for the reason he could not be found in Butler County, Kansas."

The father of the minor appeared specially and moved to quash the service.

The court heard this motion and sustained it. The journal entry of judgment reads, in part, as follows:

". . . the Court . . . finds, from the Sheriff's return . . . that service of the alias summons . . . was made . . . by the Sheriff . . . then and there delivering a true copy of said summons with all of the endorsements thereon, to G. A. Harder, as father and natural guardian of said minor, Harold Harder, and by also leaving at the actual place of residence of said minor in said county, a true and correct copy of said summons, with all the endorsements thereon; and that said Sheriff's return shows that the Sheriff was unable to deliver a copy of said summons to said Harold Harder personally for the reason that he could not be found in said County.

"The Court further finds that no copy of said summons was personally served upon said minor; that a minor cannot be served by leaving a copy of the summons at his usual place of residence; and that by reason of all of the aforesaid facts, the purported service of summons as made and had upon said minor defendant was and is not sufficient, and that said motion to quash should be sustained and allowed."

The plaintiffs have appealed.

At the outset the defendant minor calls our attention to what he terms an apparent lack of jurisdiction of this court. He argues that the notice of appeal was served on counsel for the father and none on him or his attorney. He points out that notice of appeal must be served on all adverse parties. (See G. S. 1935, 60-3306.) He argues that he, the minor defendant, was an adverse party and service of the notice of appeal should have been served either on him or on his guardian *ad litem*. He argues that the time for the appointment of a guardian *ad litem* had not yet arrived because no good service had been had on him, but that plaintiffs should have asked the trial court to appoint a guardian *ad litem* anyway. He

argues the court would have refused to appoint a guardian *ad litem* at that time and the plaintiffs could then have appealed from both the order quashing the service and the order refusing to appoint a guardian *ad litem*. He relies on the general rule that a guardian or next friend of an infant cannot waive or admit away the substantial rights of the infant or consent to do anything which may be prejudicial to him, even by neglect. (See *Suter Bros. v. Hebert*, 133 Kan. 262, 299 Pac. 627.)

Defendant admits that the acknowledgment of the notice of appeal recites service on the "attorneys of record for the defendant Harold Harder, a minor, and G. A. Harder, father and natural guardian of said minor." He argues, however, that this is obviously erroneous because there was no appearance made in the trial court by any attorney for Harold Harder, a minor, and he had no attorney of record. Defendant argues no notice of appeal was served on the minor at all and this appeal should be dismissed.

We are not impressed with the argument of the defendant on this point. It is true there was no formal appearance in the court below for the minor. Counsel was there, however, representing the minor's natural guardian. Counsel there made a legal argument, the purpose of which was to safeguard the minor's rights. In this court on appeal the same counsel are here representing the minor himself. They are arguing the correctness of the ruling the trial court made in favor of the minor. To hold under the circumstances that this court should dismiss the appeal because no notice of it was served on the minor or his attorney of record would be to observe the form of the statute and overlook the spirit and intent. Furthermore, counsel who are here urging lack of jurisdiction on account of no notice to the minor signed an acknowledgment of service of notice of appeal, which recited they were signing it as attorneys of record for "Harold Harder, a minor, and G. A. Harder, father and natural guardian of said minor." We are unable to see where any right of the minor would be prejudiced by not requiring counsel for the plaintiffs to file a motion asking the trial court to appoint a guardian *ad litem* for the minor before the question of the sufficiency of the service was settled.

On the merits in this court the plaintiffs argue that the trial court committed error in ruling that in making service of summons upon a minor a copy of the summons must be delivered to the minor personally, and that he cannot be served by leaving a copy of the

summons at his usual place of residence where a copy of such summons is personally delivered to his legal or natural guardian.

The final outcome of this appeal depends upon the construction to be given G. S. 1935, 60-408. That section provides, in part, as follows:

"In any proper case service may be made on minors, insane and other incompetent persons by a summons personally served or by publication notice as provided in this code, the same as upon other persons defendants in action. If there be a natural or legally appointed guardian for such minor, insane or incompetent person, service shall also be made in the same manner upon such guardian."

In this case service was had upon the natural guardian, that is, the father of defendant, and what is termed residence service was had on the minor. Residence service is had on defendant under the terms of G. S. 1935, 60-2507. That section provides, as follows:

"The service shall be by delivering a copy of the summons to the defendant personally, or by leaving one at his usual place of residence, at any time before the return day."

Plaintiffs point out first that service where a copy of the summons is left at the usual place of residence of defendant is a form of personal service. (See *Royse v. Grage*, 141 Kan. 702, 42 P. 2d 942; *Dean v. Metcalf*, 144 Kan. 174, 58 P. 2d 1073; and *Sedgwick County Comm'rs v. Ellis*, 161 Kan. 631, 170 P. 2d 145.) A copy of the summons was left by the sheriff at the usual place of residence of the minor defendant. Plaintiffs argue that the correct grammatical construction of the language in the statute is that the clause in G. S. 1935, 60-408, "the same as upon other persons defendants in action" refers to the clause "by a summons personally served" as well as the clause "or by publication notice as provided in this code." This construction would require a holding that service on the minor in this case was good and the motion to quash should not have been sustained. It may be said in passing that grammatically the interpretation put upon the sentence by plaintiffs is the correct one.

In answer to this argument, however, defendant points out that this court has never decided cases entirely on the location of a comma in a sentence or grammatical construction alone. He cites *State v. Deuel*, 63 Kan. 811, 66 Pac. 1037, where we quoted from Sutherland on Statutory Construction, § 260, as follows:

"'Legislative enactments are not any more than any other writings to be defeated on account of mistakes, errors or omissions, provided the intention of the legislature can be collected from the whole statute. . . . Where one

word has been erroneously used for another, or a word omitted, and the context affords the means of correction, the proper word will be deemed substituted or supplied.'"

Defendant is correct in that argument. We never decide cases altogether on grammatical construction and punctuation, where to do so would do violence to the clear intent of the legislature. The grammatical construction and punctuation, however, must be given significance. They cannot be ignored entirely. A fairly safe means of ascertaining the intention of the legislature is an examination of what it finally said in its enactments. There is no mystery about grammatical construction. Its rules are those designed to enable men to put their ideas on paper in such a form that readers, sometimes years later, may read what was written and know what the writer intended to say. When the interpretation of a statute is before us we consider whether the language used given a correct grammatical construction leads to a reasonable result and expresses what the legislature evidently intended to say. When it does so we follow it. In considering such a question we examine the entire section and in a proper case the entire chapter in connection with the general matter with which the legislature was dealing.

In the section in question the legislature was dealing not only with the matter of service of summons upon minors but with the much broader question of safeguarding the rights of minors in litigation from the time of service of the summons until the litigation was terminated.

So far we have not quoted all of G. S. 1935, 60-408. It has other provisions to safeguard the rights of minors. The balance of that section provides, as follows:

"If there be no legally appointed guardian for such minor, insane or incompetent person, or if such guardian fail to appear and answer in the action within the time fixed by the summons or publication notice, the court shall appoint a guardian *ad litem* for such minor, insane or incompetent person and such guardian *ad litem* shall file proper pleadings in such cause, which shall include a general denial of the plaintiff's petition, as shall put the plaintiff to proof of his cause of action. Such guardian *ad litem* shall receive such reasonable compensation as the court or judge before whom the action is pending, or tried, may order, the same to be taxed and collected as costs in the action. The appointment cannot be made until after the service of the summons in the action, and no default judgment shall be rendered against such minor, insane or incompetent person."

It will be noted that while the first part of the statute when dealing with service speaks of the natural guardian, that part of the

statute which deals with steps to be taken after service, however, speaks of a legally appointed guardian and provides further that on service of summons a guardian *ad litem* must be appointed for the minor even though service has been had on the natural guardian; that is, the legislature evidently intended the rights of the minor should be safeguarded by the actual conduct of the defense being in the hands of either a legally appointed guardian or a guardian *ad litem* who had been appointed by the court. It is significant, however, that no appointment of a guardian *ad litem* may be made until after service of the summons and no default judgment shall ever be rendered against a minor; that is, the action against a minor must always be contested either by a guardian who had been appointed prior to the bringing of the action or a guardian *ad litem* appointed immediately after service of the summons.

This does not mean that we overlook the requirements of G. S. 1935, 60-408, as to service, when the actual rights of the minor have later in the litigation been safeguarded by the appointment of a guardian *ad litem*. We settled that in *Suter Bros. v. Hebert*, 133 Kan. 262, 299 Pac. 627. There an action had been filed to foreclose a mortgage and a minor was a necessary party defendant. The statute in effect at the time required generally service upon the minor, who was a defendant, and her guardian or father. (See G. S. 1915, § 6968.) There was no service upon the minor as required by that statute, only upon the father, who was a defendant here. Copies of the summons were left at the home of the father and his daughter, one of whom was a minor defendant. We held the service not good and set aside the judgment on account of lack of service even though a guardian *ad litem* had been appointed for the minor in question who had carried on the litigation for the minor. One observation of this court is of interest to us here. We said, in speaking of the statute:

"There is no provision in the statute for serving the minor at the usual place of such minor's residence unless there was a showing that the minor could not be found, and there was no recital of that fact in the return." (p. 265.)

The return in this case does show that the minor could not be found. The practical result of the holding of the trial court here is that redress could never be had against a minor if he was able to evade the sheriff. Common justice and a reasonable interpretation of the statute forbid this.

The defendant cites and relies upon what we held in *Hurd v. Baty*, 149 Kan. 665, 88 P. 2d 1031. Without treating the facts in that case it may be stated it held that in an action against a minor, service must be had upon both the minor and his natural guardian. Nobody disputes that. The statute requires it and that is the end of the matter. There is certainly no clear statement in the statute, however, that the service upon the minor cannot be had by leaving a copy of the summons at the usual place of residence of the minor. A reasonable construction is that such service may be had. Were we ever so meticulous about safeguarding the rights of a minor no good reason appears why a summons handed to a baby in his crib would give him any better notice than one left at his usual place of residence by sliding it under the door. In either event service would have to be had on either the natural or legal guardian as well as the minor and the actual conduct of the litigation carried on by a legal guardian or guardian *ad litem*. The protecting arm of the court would be around the minor at all times.

Defendant argues here for the first time apparently that the place where the summons was left was not the actual residence because the sheriff could not find him there. Such does not necessarily follow. Besides, defendant did not deny the truth of the sheriff's return in the court below.

The judgment of the trial court is reversed with directions to proceed with the trial of the action.